**RICHARD BEST**
**REGIONAL DIRECTOR**
**Lara S. Mehraban**
**Sheldon L. Pollock**
**Philip A. Fortino**
**Lindsay S. Moilanen**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street, Suite 20-100**
**New York, New York 10004**
**212-336-1014 (Fortino)**
**FortinoP@sec.gov**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                              **Plaintiff,**<br><br>              **-against-**<br><br>**DAVID W. SCHAMENS,**<br><br>                              **Defendant.** | **COMPLAINT**<br><br>**22 Civ. _____ (    )**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), whose New York

Regional Office is located at 100 Pearl Street, Suite 20-100, New York, New York 10004, for its

Complaint against David W. Schamens ("Schamens" or "Defendant"), whose address is 812

Northern Shores Pt., Greensboro, North Carolina 27455, alleges as follows:

### SUMMARY

1.      This action arises from a multi-million dollar securities fraud perpetrated by

Schamens, an investment adviser, who, rather than investing his client's funds, directed them

into his own pocket.

2.      From at least February 2019, Schamens induced multiple individuals to invest in a purported investment fund called the TradeStream Algo Fund, LP (the "Algo Fund").  The Defendant told investors that the Algo Fund would pursue an algorithm-driven stock trading strategy with the potential for high returns.

3.      But Schamens never invested any of the funds he solicited.  Instead, the Defendant used most of the investors' money to pay personal expenses or to make Ponzi-like payments to earlier investors seeking to exit the fund.

4.      Schamens concealed the fraudulent nature of the Algo Fund by providing investors with fake account statements that showed large profits and by providing them with a fake letter from an auditing firm vouching for the bona fides of the Algo Fund.

5.      All told, Schamens stole at least $1.8 million of his clients' money.

## VIOLATIONS

6.      By virtue of the foregoing conduct and as alleged further herein, Defendant has violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

7.      Unless Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8.      The Commission brings this action pursuant to the authority conferred upon it by

Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)]; Sections 21(d)(1) and 21(d)(5) of the

Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)]; and Section 209(d) of the Advisers Act

[15 U.S.C. § 80b-9(d)].

9.      The Commission seeks a final judgment: (a) permanently enjoining Defendant

from violating the federal securities laws and rules this Complaint alleges he has violated;

(b) ordering Defendant to disgorge all ill-gotten gains he received as a result of the violations

alleged here and to pay prejudgment interest thereon; (c) ordering Defendant to pay civil money

penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of

the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C.

§ 80b-9(e)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to Section 22(a) of the

Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and

Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

11.     Defendant, directly and indirectly, has made use of the means and

instrumentalities of interstate commerce, of the mails and wires, and/or of the facilities of a

national securities exchange in connection with transactions, acts, practices, and courses of

business alleged herein.

12.     Venue lies in this District under Section 22(a) of the Securities Act [15 U.S.C.

§ 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers

Act [15 U.S.C. § 80b-14].  Certain of the acts, practices, transactions, and courses of business

alleged in this Complaint occurred within this District.  Specifically, the Algo Fund and a related

business entity used by Schamens in the fraud had their principal places of business in Secaucus,

New Jersey.  Schamens also solicited at least one investor who currently resides in Lake Hiawatha, New Jersey and two investors who resided in New Jersey at the time of their investment.

## DEFENDANT

13.    **Schamens**, age 64, resides in Greensboro, North Carolina.  From 1986 to 1990, Schamens was associated with various entities registered with the Commission.  In 1992, the Commission instituted a settled Order against Schamens for violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rules 10b-5 and 10b-9 thereunder, as well as aiding and abetting violations of Sections 15(c) and 17(a) of the Exchange Act and Rules 15c2-4, 15c3-1, 15c3-3, 17a-3, and 17a-4 thereunder. *See In the Matter of David W. Schamens*, Exch. Act. Rel. No. 30691 (May 12, 1992).  In that proceeding, the Commission found, among other things, that Schamens misappropriated investor funds.  Schamens was barred from association with any broker, dealer, municipal securities dealer, investment adviser, or investment company.

## OTHER RELEVANT ENTITIES

14.    **TradeStream Algo Fund, LP (the "TS Algo Fund")** is a Delaware limited partnership with its principal place of business in Secaucus, New Jersey.  The Algo Fund was founded in February 2019.  It purported to be a "proprietary algorithmic trading fund."

15.    **TradeStream Analytics, Ltd. ("TS Analytics")** is a Delaware corporation with its principal place of business in Secaucus, New Jersey.  Analytics was founded in 2007 and purported to be the "technology vendor" for the Algo Fund.  Schamens controlled TS Analytics.

## FACTS

I.     **THE OFFERING FRAUD**

16.     Schamens began soliciting prospective investors for the Algo Fund as early as February 2019.

17.     At that time, Schamens was teaching investment seminars through an entity called TradeStream University ("TS University").  The TS University students were among the prospective investors targeted by Schamens.

18.     Schamens previously had raised money from other investors to invest in other fund vehicles.  He also solicited these investors to move their money from the other funds to the Algo Fund.

19.     Schamens provided prospective investors in the Algo Fund with a confidential offering memorandum ("COM").  The COM represented that the Algo Fund was an "investment vehicle" that had been "formed for the purpose of aggregating investor funds for management." It further stated that the Algo Fund sought to "provide economic return to investors through capital appreciation of securities in [its] portfolio."

20.     The COM further represented that the managing partner of the fund, Algo Advisors, would have sole discretion of the fund's investments.  According to the COM, Algo Advisors would use algorithms from Analytics to make investment decisions.  Investors in the Algo Fund understood that Schamens controlled Algo Advisors and therefore would exercise authority over all of the investments.

21.     The COM represented that the Algo Fund would make its securities investments through one of three specifically identified broker-dealers.

22.     According to the COM, the Algo Fund would allocate 100% of its trading profits and losses to each investor's account.

23.     In addition to providing prospective investors with the COM, Schamens made

additional representations about the Algo Fund through other writings and verbally.

24.    For example, Schamens provided prospective investors with a presentation that stated that monies invested in the Algo Fund "are auto traded by Tradestream algos."  The presentation further claimed that the algorithm selected stocks and exchange traded funds based on "Average Daily Volume, Trend patterns, and Volatility measurements."  And, that "Funds may be withdrawn upon notice during the first 10 business days of each quarter end month, payable on the 15th of the following month after quarter end."  The presentation also provided examples of the results of the algorithmic trading in certain securities.

25.    In conversations with investors in the Algo Fund, Schamens represented investments would have up to an 18% annual rate of return.

26.    Investors in the Algo Fund signed subscription agreements purporting to sell them limited partnership ("LP") interests.   The LP interests were identified as securities, and the subscription agreement stated the securities had not been registered with the Commission and were being offered pursuant to an exemption to the registration requirements.

27.    From January 2020 through August 2021, at least 16 investors invested approximately $1.8 million in the Algo Fund.

28.    The Algo Fund was entrusted to Schamens to manage, and Schamens had sole discretion to control the funds invested in the Algo Fund.

29.    Each of the representations Schamens made to prospective investors through the COM or otherwise about the Algo Fund was false, and Schamens knew they were false at the time he made them.

30.    At the time he solicited the investors, Schamens had no intention of investing any of the money in the manner described to the investors or otherwise.  Indeed, Algo Fund did not

have an account at the three broker-dealers through which the fund purportedly was trading.

31.     Schamens knew at the time he solicited the investors that he would be using the funds they invested to pay his personal expenses and for other non-investment purposes.

## III.    SCHAMENS CONCEALED HIS FRAUD

32.     After investors gave him their money, Schamens continued to make false statements to the investors to conceal his fraud.

33.     Schamens provided investors in the Algo Fund with monthly statements purporting to show the value and performance of their account.  In 2020, some of the statements showed year-to-date returns of over 80 percent.

34.     Schamens also caused tax forms to be prepared and issued to some investors each year, showing each investor's purported gain on their investment.

35.     The monthly statements and tax forms were false.  Because there were no investments in the account, there were no investment gains in any of the investor accounts.

36.     At the time he provided the account statements and tax forms to investors, Schamens knew that the information contained in them about investment returns was false.

37.     Schamens also provided Algo Fund investors with access to an online portal where they could view certain information about their investments.

38.     In November 2020, a "2019 Annual Report" was uploaded to the portal (the "Audit Letter").  The Audit Letter purported be from audit firm and indicated the firm had reviewed and audited transactions for the Algo Fund and "independently verified all transactions."

39.     In fact, no audit of the Algo Fund had been performed.  Schamens knew that the statements in the Audit Letter were false at the time he made it available to the Algo Fund investors.

IV.    **SCHAMENS USED INVESTOR FUNDS FOR PERSONAL EXPENSES**

40.    Rather than invest the money investors contributed to the Algo Fund, Schamens used it to pay personal expenses and to repay earlier investors exiting the fund.

41.    Schamens used the majority of investor funds sent to the Algo Fund for personal expenses.

42.    Of the $1.8 million sent to the Algo Fund by investors, Schamens sent over $1.3 million to an account in the name of Analytics for which he was the sole signatory.

43.    Schamens then used the Analytics account to pay personal expenses, such as payments to personal attorneys and retail purchases.

44.    Schamens also sent approximately $500,000 from the Analytics account to several personal accounts in his name.  Schamens used the funds sent to these personal accounts for personal expenses such as his mortgage, cars, attorney payments, retail spending, and political contributions.

45.    Schamens also sent approximately $700,000 from the Analytics account to another bank account he controlled.  He used $100,000 of these funds to pay his personal attorneys and $430,000 to settle arbitration claims against him.

V.    **SCHAMENS USED INVSETOR FUNDS TO REPAY EARLIER INVESTORS**

46.    In early 2021, two investors in Algo Fund sought redemptions of at least part of their investments.

47.    At the time of the redemption requests, the Algo Fund account did not have the funds to meet them.

48.    Schamens gave the two investors a series of excuses for not honoring the redemption requests.

49.    On or about June 11, 2021, two new investors sent a total of $380,000 to the Algo

Fund account.

50.     After receiving those funds, on June 11 and 14, 2021, Schamens sent a total of $250,000 to the two investors who had sought redemptions.

## FIRST CLAIM FOR RELIEF
### (Violations of Section 17(a) of the Securities Act)

51.     The Commission re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 50 of this Complaint.

52.     By engaging in the conduct described above, Defendant, in the offer or sale of securities, knowingly, recklessly, or negligently, by the use of means or instruments of transportation or communication in interstate commerce or the mails, directly or indirectly:

      a.     Employed devices, schemes, or artifices to defraud;

      b.     Obtained money or property by means of untrue statements of material facts, or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.     Engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

53.     By engaging in the foregoing conduct, Defendant violated, and unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)

54.     The Commission re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 50 of this Complaint.

55.     By engaging in the conduct described above, Defendant knowingly or recklessly,

in connection with the purchase or sale of securities, directly or indirectly, by the use or means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

      a.      Employed devices, schemes, or artifices to defraud;

      b.      Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.      Engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

56.      By engaging in the foregoing conduct, Defendant violated, and unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF
**(Violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder)**

57.      The Commission re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 50 of this Complaint.

58.      By engaging in the conduct described above, Defendant, while acting as an investment adviser, by use of the means and instrumentalities of interstate commerce and of the mails, directly or indirectly:

      a.      employed devices, schemes, or artifices to defraud clients and prospective clients;

      b.      engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients and prospective clients; and

c.    engaged in acts, practices, or courses of business which are fraudulent,

deceptive or manipulative.

59.    By engaging in the foregoing conduct, Defendant violated, and unless restrained

and enjoined, will continue to violate Sections 206(1), 206(2), and 206(4) of the Advisers Act

[15 U.S.C. §§ 80b-6(1) and 80b-6(2)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final

Judgment:

## I.

Permanently enjoining Defendant and his agents, servants, employees and attorneys and

all persons in active concert or participation with any of them from violating, directly or

indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the

Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and

Sections 206(1) , 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and

80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

## II.

Ordering Defendant to disgorge all ill-gotten gains and/or unjust enrichment received

directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations,

pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and

78u(d)(7)];

## III.

Ordering Defendant to pay civil monetary penalties under Section 20(d) of the Securities

Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and

Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

**IV.**

Granting any other and further relief this Court may deem just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated: New York, New York
      March 7, 2022

                                    /s/ Richard Best
                                  RICHARD BEST
                                  REGIONAL DIRECTOR
                                  Lara S. Mehraban
                                  Sheldon L. Pollock
                                  Philip A. Fortino
                                  Lindsay S. Moilanen
                                  Attorneys for Plaintiff
                                  SECURITIES AND EXCHANGE COMMISSION
                                  New York Regional Office
                                  100 Pearl Street, Suite 20-100
                                  New York, New York 10004
                                  212-336-1014 (Fortino)
                                  FortinoP@sec.gov